I,CARAWAY, J.
A jury found defendant, Patrick Wayne Terrell, guilty as charged on one count of possession of cocaine, in violation of La. R.S. 40:967 C. Terrell was adjudicated a fourth felony offender and given the mandatory sentence of life imprisonment at hard labor without benefits. After the trial court denied Terrell’s motion to reconsider the sentence, the defendant appealed his sentence. He complains that the term is disproportionate to the severity of the offense and excessive due to his disabilities and the non-violent nature of his prior offenses. Additionally, he asserts that the trial court did not use the correct Habitual Offender Law which was amended after the commission of the crime. Since we find that the trial court could consider the legislative change in policy brought about by the 2001 amendment to the Habitual Offender Law, we vacate the sentence and remand for resentencing.

Facts

On October 1, 1999, members of the Caddo Parish Sheriffs Office Organized Crime Division executed a search warrant on a Shreveport residence upon information that from that location Terrell had made several sales of cocaine to an informant. Upon entering the house, police encountered and detained two males who indicated that they were visiting Terrell. Terrell fled the scene but was apprehended by police officers. While executing the search, officers found crack cocaine on the kitchen table near the door where Terrell exited and on the path he took as he ran away. In the kitchen police observed a plate containing what appeared to be L,cocaine residue. Police later identified Terrell’s fingerprints on the plate. A set of scales with cocaine residue, several packaged rocks of crack cocaine, packages of plastic bags and other paraphernalia were found in the residence. The total amount of cocaine was not presented in evidence; however, the evidence transfer receipt in the record indicates that the total quantity was 5.5 grams. Police also found mail addressed to Terrell in the home. Terrell provided the subject residence as his address to the Caddo Parish Sheriffs Office bonding office.
A unanimous jury found defendant guilty as charged. Thereafter, Terrell was adjudicated a fourth felony offender based upon prior convictions for distribution of marijuana in May of 1989 and possessions of cocaine in 1994 and 1996. The court imposed the mandatory life sentence despite Terrell’s contention that the life sentence as applied to him was unconstitutionally excessive.
*1284 Terrell sought reconsideration of the sentence on the grounds that he was the exceptional defendant for which downward departure from the mandatory sentencing provisions was warranted. Terrell cited the legislative change to the Habitual Offender Law by Act 408 of 2001. At the hearing on the motion to reconsider the sentence, the trial court considered Terrell’s arguments that his physical limitations, including partial paralysis and AIDS, and non-violent criminal history, mandated downward departure from the mandatory life sentence of La. R.S. 15:529.1. Ultimately, however, the court rejected Terrell’s claims recommending that he seek |3relief from the sentencing review panel which was established as a part of the legislation of 2001. La. R.S. 15:574.22.
On appeal, Terrell’s counsel reiterates the claim that the life sentence imposed is constitutionally excessive due to the trial court’s failure to give sufficient consideration to the above-noted mitigating factors. In a pro se brief, Terrell adds that the sentence is illegal because the trial court applied the wrong habitual offender law to his case and that the trial court erroneously believed that it could not deviate from the statutory mandatory minimum sentence.

Discussion

At the time of the present offense in 1999, the Habitual Offender Law, La. R.S. 15:529.1(A)(1)(c)(ii), imposed a mandatory life sentence for a fourth felony offender when “the fourth or subsequent felony or any of the prior felonies” amounted to “a violation of the Uniform Controlled Dangerous Substance Law punishable by imprisonment for more than five years.” Because at the time of Terrell’s 1989 conviction, distribution of marijuana carried a maximum sentence of more than five years, the applicable provisions of the Habitual Offender Law at the time of the offense in 1999 mandated a life sentence for Terrell.
Terrell notes that his three other drug convictions were for possession charges which did not carry a maximum sentence of more than five years. Under the posfi-2001 Habitual Offender Law, “the fourth felony and two of the prior felonies” would be required to be “violation[s] of the Uniform Controlled Dangerous Substance Law punishable by imprisonment for ten hyears or more” in order for the enhanced sentence of life imprisonment to apply. La. R.S. 15:529.1(A)(1) (c) (ii) following amendment by Act 408 of 2001. Likewise, none of his four drug felonies, under either version of the Habitual Offender Law, were crimes of violence which also serve to enhance the punishment to life imprisonment for four time offenders.
We initially reject Terrell’s argument regarding the direct application of the new Habitual Offender Law to his sentencing. Indeed, Act 403 of 2001 amended the provisions of La. R.S. 15:529.1. Nevertheless the effective date of that amendment was June 15, 2001 and Section 6 of the Act provided that it was to have prospective effect only. The changes mandated by Act 403, including the changes to La. R.S. 15:529.1, do not apply to sentences imposed for crimes committed before the acts’s effective date. State v. Barnes, 02-2059 (La.4/4/03), 845 So.2d 354; State v. Surry, 37,448 (La.App.2d Cir.9/24/03), 855 So.2d 893. Because Terrell committed the present offense prior to the effective date of the amendments to La. R.S. 15:529.1, the enhancement statute to be applied is the one in effect at the time of the commission of the offense for which the sentence is being enhanced. State v. Barnes, supra; State v. Wade, 36,295 (La.App.2d Cir.10/23/02), 832 So.2d 977, writ denied 02-2875 (La.4/4/03), 840 *1285 So.2d 1213. Thus, the court correctly applied the statute in effect in 1999 at the time of the commission of the offense, for which Terrell’s sentence is being enhanced.
Terrell’s argument that the 1999 version of the Habitual Offender Law imposes unconstitutionally excessive punishment requires review of |fithe decisions of the Louisiana Supreme Court on that subject. In State v. Dorthey, 623 So.2d 1276 (La.1993), while finding that the Habitual Offender Law did not violate Louisiana’s constitutional separation of powers provision, the court stated:
If ... the trial judge were to find that the punishment mandated by R.S. 15:529.1 makes no “measurable contribution to acceptable goals of punishment” or that the sentence amounted to nothing more than “the purposeful imposition of pain and suffering” and is “grossly out of proportion to the severity of the crime”, he has the option, indeed the duty, to reduce such sentence to one that would not be constitutionally excessive.
Id. at 1280-1281.
Following the Dorthey ruling, the court later found the need “to curtail the district court’s use of Dorthey in cases in which it appeared that the courts were simply substituting their judgment of what constituted an appropriate penalty for that of the legislature,” as seen by its rulings in State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672 and State v. Lindsey, 99-3302, 99-3256 (La.10/17/00), 770 So.2d 339, 343, cert. denied, 532 U.S. 1010, 121 S.Ct. 1739, 149 L.Ed.2d 663 (2001). Johnson emphasized that the sentences imposed upon recidivists by the Habitual Offender Law are presumed to be constitutional. Lindsey reviewed the development of the law and the tests for constitutional excessiveness as follows:
This effort culminated in Johnson, where we set out guidelines for when and under what circumstances courts should exercise their discretion under Dorthey to declare excessive a minimum sentence mandated by the Habitual Offender Law. We held that “[a] court may only depart from the minimum sentence if it finds that there is clear and convincing evidence in the particular case before it which would rebut [the] presumption of constitutionality” and emphasized that “departures downward from the minimum sentence under the Habitual Offender Law should occur only in rare situations.” State v. 6Johnson, supra at 676, 677. To rebut the presumption that the mandatory minimum sentence is constitutional, the defendant must clearly and convincingly show that:
[he] is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature’s failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.
Id. (Citing State v. Young, 94-1636 (La.App. 4 Cir. 10/26/95), 663 So.2d 525, 529 (Plotkin, J., concurring)).
In making this determination, we held that “while a defendant’s record of nonviolent offenses may play a role in a sentencing judge’s determination that a minimum sentence is too long, it cannot be the only reason, or even the major reason, for declaring such a sentence excessive.” Id. This is because the defendant’s history of violent or non-violent offenses has already been taken into account under the Habitual Offender Law for third and fourth offenders, which punishes third and fourth offenders with a history of violent offenses *1286 more severely than those with a history of non-violent offenses. Id.
In addition, we held that the trial judge must keep in mind the goals of the statute, which are to deter and punish recidivism, and, we instructed that the sentencing court’s role is not to question the wisdom of the Legislature in requiring enhanced punishments for multiple offenders, but rather to determine whether the particular defendant before it has proven that the minimum sentence is so excessive in his case that it violates Louisiana’s constitution. Id. at 677.
Finally, we held that if a trial judge finds clear and convincing evidence which justifies a downward departure, he is not free to sentence the defendant to whatever sentence he feels is appropriate under the circumstances, but must instead sentence the defendant to the longest sentence which is not constitutionally excessive.
Id. at 343.
Because of the significant change in the legislative policy for the Habitual Offender Law brought about by the 2001 legislation, we have also reviewed Supreme Court rulings regarding the trial court’s ability to ^consider such legislative change in policy. Indeed, as indicated by the above expression in the Dorthey/Johnson/Lindsey rulings, the “accepted goals of punishment” and the legislative assignment of “sentences that are meaningfully tailored to the culpability of the offender” require that the trial court not completely disregard a change in legislative sentencing policy that occurs after the commission of the crime but before the sentencing. After an obvious legislative change in policy, it cannot be said that a trial court, in considering that change, is substituting its judgment of what constitutes an appropriate sentence for that of the legislature.
In State v. Robinson, 423 So.2d 1053 (La.1982), the trial court sentenced the defendant to the maximum sentence of five years. In imposing that sentence, the trial court took into consideration the enactment of a firearm sentencing provision (former La.C.Cr.P. art. 893.1) which was enacted after the commission of the offense. The statute required a mandatory minimum sentence of five years for all offenses with a maximum sentence of five years or more, if the offense involved the use of a firearm. The Supreme Court affirmed the five-year sentence, stating:
The trial judge took into account the legislative policy evidenced by La. C.Cr.P. art. 893.1 in sentencing in this instance. In imposing the maximum sentence of five years, which independently of article 893.1 was within her discretion, the trial court alluded to the legislative policy enacted after the commission of this crime. That consideration on her part was not legally inappropriate; that consideration and many others were pertinent in the exercise of her sentencing discretion.
Id. at 1063.
This consideration of the legislative policy change has recently been cited by the Supreme Court as a pertinent inquiry for imposing sentences |sunder the Habitual Offender Law after its amendment by the 2001 legislation. In State v. Wilson, 01-2815 (La.11/22/02), 836 So.2d 2, the court reviewed the claim of an unconstitutionally excessive life sentence for the fourth offender whose only crime of violence was his last offense. That offense resulted in a conviction in the trial court of first degree robbery, but on his initial appeal to this court, the first degree robbery conviction was reduced to simple robbery. This court, however, affirmed the trial court’s imposition of the mandatory life sentence since the simple robbery conviction was *1287 also a crime of violence. The Supreme Court reversed our affirmation of the sentence for the following reasons:
Because the court of appeal reduced defendant’s conviction from first degree robbery to simple robbery, the district court judge did not have the opportunity to impose the life sentence in light of the lesser conviction. Defendant is entitled to have the district court impose the sentence anew, and, in connection therewith, to present evidence and/or argument to the district court judge that a sentence of life imprisonment without the benefit of parole, probation, or suspension of sentence is unconstitutionally excessive because of the reduced conviction, the non-violent nature of the prior offenses, and the fact that the legislature has amended the Habitual Offender Law to provide a more lenient punishment for crimes committed after June 15, 2001.
Id. (Emphasis supplied.)
The leniency of the new law referred to in Wilson occurs because the violent offender must now have committed crimes of violence for three of the four convictions including the last committed felony. The punishment is still enhanced for 20 years or more for the four-time recidivist pursuant to La. R.S. 529.1(A)(1)(c)(i) which remained unchanged by the 2001 | ¡¡legislation. However, the law is now significantly more lenient with regard to the imposition of the mandatory life sentence.
Likewise, regarding habitual drug offenders such as Terrell, the last drug offense and two of the prior felonies must be violations of the more serious drug charges punishable by imprisonment for ten years or more, as opposed to the lesser possession convictions in this ease. Since Terrell had only one ten-year drug offense, which was his oldest and not his latest offense, the leniency of the new law indicates that such drug offender after June 15, 2001, should be sentenced under La. R.S. 15:529.1(A)(l)(c)(i) to a term ranging from 20 years at hard labor to life imprisonment. According to Wilson, the trial court may take into consideration such leniency as reflected in the legislature’s new policy. Additionally, we note that the trial court was correct in referring to the leniency of the policy also reflected in the guidelines for the new sentencing review panel also established by Act 408 in 2001, La. R.S. 15:574.22. The panel may recommend clemency which presumably would reduce previously imposed life sentences for certain drug offenders whose distribution charges involved quantities of cocaine less than 28 grams.
The Wilson ruling quoted above was rendered only a few days before the trial court’s hearing on Terrell’s motion for reconsideration of sentence. That ruling was not argued to the trial court. Most significantly, the trial court’s reference to the sentencing review panel as the only avenue for relief for Terrell under the new legislative policy of leniency incorrectly discounts the trial court’s primary sentencing role. The trial court “has the option, Imindeed the duty, to reduce such sentence to one that would not be constitutionally excessive” in view of the specific facts regarding the offender’s prior offenses and “the fact that the legislature has amended the Habitual Offender Law to provide more lenient punishment” for drug offenders such as Terrell who commit crimes after June 15, 2001. After those considerations, the trial court may conclude that former La. R.S. 15:529.1’s mandatory life sentence makes no measurable contribution to acceptable goals of punishment now reflected in this state for this defendant. However, that process of consideration by the trial court is not reflected in this record. Accordingly, in view of the Wilson *1288 ruling, we remand this case to the trial court for further reconsideration of the sentence.
SENTENCE VACATED; REMANDED FOR RESENTENCING.